PETER D. KEISLER
Assistant Attorney General
THEODORE HIRT
Assistant Branch Director
JOEL McELVAIN, D.C. Bar No. 448431
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20001
Telephone:   (202) 514-2988
Fax:            (202) 616-8202
Email:         Joel.L.McElvain@usdoj.gov

Attorneys for Alberto R. Gonzales

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| **ALBERTO R. GONZALES, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES,** | ) ) ) |
| **Movant,** | ) Case No. _____-MISC ) |
| v. | ) **Notice of Motion, and Motion to** ) **Compel Compliance with** ) **Subpoena Duces Tecum** |
| **GOOGLE INC.,** | ) ) Hearing:      To Be Set |
| **Respondent.** | ) Time:         To Be Set ) |
| | ) |

NOTICE is hereby given of the filing of this motion pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure by Alberto R. Gonzales, acting in his official capacity as the Attorney General of the United States.  This motion seeks compel the Respondent, Google Inc. ("Google"), to comply with the subpoena that the Attorney General has issued to it, and to produce and permit for inspection and copying the materials specified in that subpoena.  Pursuant to Local Civil Rule 37-1(a), the undersigned counsel for the Attorney General represents that he has attempted to confer with counsel for Google with respect to this motion, but that, after conferring, Google has chosen to refuse to comply with the subpoena.  In support of this motion, the Attorney

General is also filing the Declaration of Joel McElvain, with exhibits attached, and the Declaration of Philip B. Stark, Ph.D.

This motion seeks an order from this Court directing Google to comply with the subpoena, and to produce the materials described therein. As will be explained in greater detail below, those materials would be of assistance to the government in its preparation of its defense in the case *ACLU, et al. v. Gonzales*, Civil Action No 98-CV-5591 (E.D. Pa.).

## BACKGROUND

In 1998, Congress enacted, and the President signed into law, the Child Online Protection Act (COPA), which is now codified as 47 U.S.C. § 231. Congress was concerned with protecting the physical and psychological well-being of minors from the harmful effects of their exposure to sexually explicit material on the Internet. In furtherance of this important goal, COPA prohibits the knowing making of a communication, by means of the World Wide Web, "for commercial purposes that is available to any minor and that includes material that is harmful to minors," subject to certain affirmative defenses. 47 U.S.C. § 231(a)(1). For this purpose, the statute defines the phrase "material that is harmful to minors" as a term of art to mean material either that is obscene or that "(A) the average person, applying contemporary community standards, would find, taking the material as a whole and with respect to minors, is designed to appeal to, or is designed to pander to, the prurient interest; (B) depicts, describes, or represents, in a manner patently offensive with respect to minors, an actual or simulated sexual act or sexual conduct, an actual or simulated normal or perverted sexual act, or a lewd exhibition of the genitals or post-pubescent female breast; and (C) taken as a whole, lacks serious literary, artistic, political, or scientific value for minors." 47 U.S.C. § 231(e)(6).

Upon the enactment of COPA, the American Civil Liberties Union and several other plaintiffs filed an action in the United States District Court for the Eastern District

of Pennsylvania, seeking a declaration that COPA violates the First Amendment, and also seeking corresponding injunctive relief. The district court (the Hon. Lowell A. Reed, Jr.) granted the plaintiffs' motion for a preliminary injunction. *ACLU v. Reno*, 31 F. Supp. 2d 473 (E.D. Pa. 1998). The United States Court of Appeals for the Third Circuit affirmed the grant of the preliminary injunction. *ACLU v. Reno*, 217 F.3d 162 (3d Cir. 2000). After granting certiorari, the Supreme Court of the United States vacated the judgment of the court of appeals, and remanded the case to that court for further consideration. *Ashcroft v. ACLU*, 535 U.S. 564 (2002). After the court of appeals again affirmed the grant of the preliminary injunction, *ACLU v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003), the Supreme Court again granted certiorari.

A five-member majority of the Court affirmed the judgment of the court of appeals, and thus affirmed the grant of the preliminary injunction. *Ashcroft v. ACLU*, 124 S. Ct. 2783 (2004). The Court noted that, given Congress's careful regard when it enacted COPA for the proper standard of regulation of harmful-to-minors materials, "the Judiciary must proceed with caution and . . . with care before invalidating the Act." *Id.* at 2788 (internal quotation omitted; ellipses in original). The Court concluded, however, that the district court had not abused its discretion in entering the preliminary injunction. It held that there was an insufficient record, at that stage in the proceedings, by which the Government could carry its burden of proof that existing technologies, namely filtering software, are less effective than the statutory restrictions in protecting minors from harmful, sexually explicit material. *Id.* at 2793. Because "there are substantial factual disputes remaining the case," the Court remanded the matter for trial on the merits. *Id.* at 2794.

As directed by the Supreme Court, the Government is now developing its defense of the constitutionality of COPA, and, specifically, its development of a factual record in support of its contention that COPA is more effective than filtering software in protecting minors from exposure to harmful materials on the Internet. As part of its development of

this defense, the Government has issued subpoenas to Google, and to other entities that operate search engines on the Internet, asking those entities to produce two sets of materials. (McElvain Decl., Ex. A ("Subpoena").)  First, the subpoena asks Google to produce an electronic file containing "[a]ll URL's that are available to be located through a query on your company' search engine as of July 31, 2005." (Subpoena, Request No. 1.)  After lengthy negotiations, the Government has narrowed this request to seek the production of "a multi-stage random sample of one million URL's" from Google's database, *i.e.*, a random selection of the various databases in which those URL's are stored, and a random sample of the URL's held within those selected databases. (McElvain Decl., Ex. C ("DOJ Letter") at 1.)  Second, the subpoena also asks Google to produce an electronic file containing "[a]ll queries that have been entered on your company' search engine between June 1, 2005, and July 31, 2005, inclusive." (Subpoena, Request No. 2.)  Again, after lengthy negotiations, the Government has narrowed this request to seek the production of an electronic file containing "the text of each search string entered onto Google's search engine over a one-week period (absent any information identifying the person who entered such query)." (DOJ Letter at 1.)  Despite these narrowing constructions, Google has refused to comply with these requests in any way. (McElvain Decl., Ex. B ("Ramani Letter").)

The production of those materials would be of significant assistance to the Government's preparation of its defense of the constitutionality of this important statute. The production of a set of queries entered onto Google's search engine would assist the Government in its efforts to understand the behavior of current web users, to estimate how often web users encounter harmful-to-minors material in the course of their searches, and to measure the effectiveness of filtering software in screening that material. (Stark Decl., ¶ 4.)  Similarly, the production of a sample of the URL's that are available to be recovered from a search of Google's search engine would assist the Government in its efforts to understand the web sites that users of search engines can find through the use of

search engines, to determine the character of those web sites, to estimate the prevalance

of harmful-to-minors material on those web sites, and to measure the effectiveness of

filtering software in screening that harmful-to-minors material.  (Stark Decl., ¶ 3.)

## DISCUSSION

The Supreme Court has mandated, in the remand of *Aschroft v. ACLU* to the

district court, that the parties develop a factual record regarding the relative effectiveness

of COPA and of filtering software in restricting the access of minors to harmful-to-minors

material on the Internet.  The production of the materials sought in the Government's

subpoena to Google would be of assistance to the Government in its efforts to comply

with this mandate.  Google, nonetheless, has refused to comply in any way with the

subpoena.  It has asserted objections of relevance, of privilege, and of burden to both of

the requests in the subpoena.  None of its objections, however, suffices to excuse Google

from its discovery obligations.

**I.    Google Is Obligated under the Subpoena to Produce a Set of Queries
       Entered on to Its Search Engine**

The subpoena requires Google to produce an electronic file containing "[a]ll

queries that have been entered on your company's search engine between June 1, 2005,

and July 31, 2005, inclusive."  (Subpoena, Request No. 2.)  The Government has

narrowed that request to seek the production of an electronic file containing "the text of

each search string entered onto Google's search engine over a one-week period (absent

any information identifying the person who entered such query)."  (DOJ Letter at 1.)

Google first objects to this request on grounds of relevancy.  (Ramani Letter at 4.)

However, "[t]he non-party witness is subject to the same scope of discovery under [Rule

45] as that person would be as a party to whom a request is addressed pursuant to Rule

34."  Fed. R. Civ. P. 45, advisory committee's notes to 1991 amendment.  Thus, a request

for production submitted to a non-party meets the standard of relevance so long as it is

reasonably calculated to lead to the discovery of admissible evidence.  *See United States*

1   *ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002). This request easily

2   meets that standard. As discussed above, the production of this sample would permit the

3   Government to evaluate whether COPA or filtering software is more effective in

4   restricting access to harmful-to-minors materials in response to searches as they are

5   actually performed by present-day users of the Internet. (Stark Decl., ¶ 4.)

6       Google next objects that its compliance with the request would require it to

7   produce information identifying the users of its search engines. (Ramani Letter at 4.)

8   This concern is illusory. The subpoena specifically directs Google to produce only the

9   text of the random sample of search strings, without any additional information that

10  would identify the person who entered any individual search string. (Subpoena, Request

11  No. 2.) The Government has issued subpoenas to, and has received compliance from,

12  other entities who operate search engines, and each of those entities has produced

13  electronic files to the Government that contain the texts of the search strings, but that do

14  not contain any additional personal identifying information. (Stark Decl., ¶ 9.) Google

15  thus should have no difficulty in complying in the same way as its competitors have.

16      Google also contends that the material sought in this request is redundant, given

17  the fact that the Government has issued similar subpoenas to other search engine

18  operators. (Ramani Letter at 5.) This objection misunderstands the nature of the

19  Government's request. The production of a set of queries from Google's database, in

20  combination with similar productions from other search engine operators, will assist the

21  Government in developing a sample of the overall universe of search engine queries,

22  while accounting for the potential of any variations in the types of queries that are entered

23  into different search engines. (Stark Decl., ¶¶ 5-6.) Because Google has the largest share

24  of the web search market, its response to the subpoena would be of value to the

25  Government in its development of its overall sample of queries. (Stark Decl., ¶¶ 5-7.)

26      Google next argues that the subpoena asks it to produce privileged trade secrets.

27  (Ramani Letter at 5.) We do not understand Google to claim that the actual texts of a

28

1  random sample of the searches entered on its search engine are trade secrets (nor would

2  such a claim be plausible).  Instead, Google asserts that the total number of queries that it

3  receives within a given day is itself a trade secret.  It identifies no reason to conclude that

4  it would suffer any competitive harm from the disclosure of this figure, however.  In any

5  event, to the extent that such a figure would constitute a trade secret, the district court

6  overseeing the underlying litigation has entered a comprehensive protective order that

7  protects such privileged material from disclosure.  (McElvain Decl., Ex. D ("Protective

8  Order").)  Google does not argue that this protective order is inadequate in any way, but

9  argues instead only that the Government might inadvertently fail to comply with that

10  order.  This argument does not excuse Google from complying with the subpoena, subject

11  to the protections it has already received through the entry of the protective order.  *See,*

12  *e.g., Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987)

13  (court will not presume that terms of protective order will be violated).

14      Lastly with respect to the request for the production of queries, Google contends

15  that it will be subject to an undue burden in complying with this request.  (Ramani Letter

16  at 5.)  To the contrary, any burden that Google will face will be minimal.  The request

17  seeks only the production of the queries that were entered on to Google's search engine

18  over a seven-day period in an electronic text file.  The process of producing this text file

19  is not complicated; other operators of search engines have complied with this request, and

20  have not reported that they encountered any difficulty or burden in doing so.  (Stark Decl.,

21  ¶ 8.)  Moreover, the Government is willing to work with Google to specify a multi-stage

22  sample of the queries; the use of that approach would reduce any burden faced by Google

23  well below that of its competitors.  (Stark Decl., ¶ 8.)  (Of course, the Government is

24  willing to compensate Google for its reasonable expenses in complying with both

25  requests in this subpoena.)  The minimal burden that Google faces in complying with this

26  request must be balanced against the clear relevance of the material to the Government's

27  preparation of its defense of the constitutionality of COPA.  *See Compaq Computer Corp.*

28

1   *v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995).  Given the

2   Supreme Court's explicit mandate for the development of a factual record regarding the

3   relative effectiveness of COPA and filtering software, the relevance of this request easily

4   outweighs the small burden faced by Google.

5   **II.   Google Is Obligated under the Subpoena to Produce a Sample of**
    **URL's Available to be Retrieved from Its Search Engine**
6

7           The subpoena further requires Google to produce an electronic file containing

8   "[a]ll URL's that are available to be located through a query on your company' search

9   engine as of July 31, 2005." (Subpoena, Request No. 1.)  The Government has also

10  narrowed this request to seek the production of "a multi-stage random sample of one

11  million URL's" from Google's database, *i.e.*, a random selection of the various databases

12  in which those URL's are stored, and a random sample of the URL's held within those

13  selected databases. (DOJ Letter at 1.)  As with the first request, Google objects to this

14  request on relevance grounds. (Ramani Letter at 3.)  This request, however, easily meets

15  the minimal standard of relevance under Rules 26 and 45.  The production of these

16  materials will permit the Government to review a sample set of Internet addresses

17  available to be retrieved from the search engines operated by Google and by other

18  entities.  From that set, the Government will be able to review the sample to draw

19  conclusions as to the prevalence of harmful-to-minors material on the portion of the

20  Internet that is retrievable through search engines. (Stark Decl., ¶ 3.)  Thus, the request is

21  plainly reasonably calculated to lead to the discovery of admissible evidence.

22          Google also objects that its compliance with this request would imply that its

23  search-engine database is reflective of the entire world-wide web. (Ramani Letter at 3.)

24  The Government is unaware of any privilege or burden claim to which this objection

25  could possibly relate.  In any event, there is no basis for this objection.  The subpoena

26  seeks the production of a sample of URL's available on Google's search engine, not to

27  draw conclusions or to make representations as to the entire nature of the Internet, but

28

instead to evaluate the portion of the Internet that is searchable through the search engines operated by Google and by other entities.  (Stark Decl., ¶ 10.)

Next, Google asserts that the Government could obtain this sample set of URL's from other sources.  (Ramani Letter at 3.)  As Google itself acknowledges, however, the Government has attempted to gather similar data from other sources, but has found those sources to be incomplete.  (*Id.*)  In any event, as a matter of simple logic, given the Government's stated purpose of evaluating a sample set of URL's available to be retrieved from searches on the various search engines presently available, the most readily available source for those materials are the operators of search engines themselves.  (Stark Decl., ¶ 5.)

Google also objects, as it did with the request discussed above, that this request seeks redundant information, given the fact that the Government has issued similar subpoenas to other search engine operators.  (Ramani Letter at 4.)  As discussed above, this objection misunderstands the purpose of the request.  The production of a sample set of URL's from more than one search engine operator will permit the Government to draw conclusions regarding the total universe of URL's available to be retrieved through the use of a search engine, and to verify those conclusions against possible variations in the scope of URL's available in the databases of differing search engines.  (Stark Decl., ¶¶ 5-6.)  This request thus is in no sense redundant.

Google further asserts that it would be unduly burdened if required to respond to this request.  (Ramani Letter at 4.)  To the contrary, the process of selecting a random sample among the various sources in which Google maintains its database of URL's, selecting a random sample of URL's from those sources, and producing a text file of the results, is straight-forward; other search engine operators have complied with this request, as they have with the request for queries discussed above, and they have not reported any difficulty in performing this task.  (Stark Decl., ¶ 8.)  Again, the specification of a multi-stage sample to be used in drawing the URL's from Google's database would reduce any

1   burden faced by Google below that faced by the other search engine operators. (Stark

2   Decl., ¶ 8.)  Google should not be excused from the same, reasonable discovery

3   obligations as those of its competitors.

4         Finally, Google contends that this request, like the request above, would require it

5   to disclose its trade secrets, namely, the number of URL's in its database and the number

6   of servers it uses to maintain that database. (Ramani Letter at 4.)  (Google, rightly, does

7   not contend that the actual resulting random sample of URL's that it would produce could

8   in any sense be considered to be a trade secret.)  Again, Google identifies no defect in the

9   protective order that has been entered in this litigation, and it may not rely purely on

10  speculation that the order might be violated to justify its refusal to comply with the

11  subpoena.  In any event, Google fails to identify any competitive harm that could befall it

12  if it were to disclose these facts to the Government for the expressly limited purpose of

13  the drawing of a random sample of URL's from the Google database.

14        Given the explicit mandate from the Supreme Court for the development of a

15  factual record regarding the effectiveness of COPA and of filtering software, and given

16  the demonstrated usefulness that the subpoenaed materials would have for the

17  Government in its development of that record, the Government has demonstrated its

18  entitlement to Google's compliance with the subpoena.  This Court should require Google

19  to comply with the subpoena on the same terms that its competitors have.

20

21

22

23

24

25

26

27

28

*Gonzales v. Google Inc.*
No. _____-MISC
Motion to Compel

1

## CONCLUSION

2    For the foregoing reasons, the Movant, Alberto R. Gonzales, in his official

3  capacity as Attorney General of the United States, respectfully requests that this motion

4  be granted and that the Respondent, Google, Inc., be compelled to comply with the

5  subpoena issued to it.  A proposed order is attached for the Court's convenience.

6  Dated: January 18, 2006                    Respectfully submitted,

7                                             PETER D. KEISLER
                                             Assistant Attorney General
8
                                             THEODORE HIRT
9                                             Assistant Branch Director

10

11                                           JOEL McELVAIN
                                             Trial Attorney
12                                           United States Department of Justice
                                             Civil Division, Federal Programs Branch
13                                           20 Massachusetts Ave., NW, Room 7130
                                             Washington, D.C. 20001
14                                           Telephone:   (202) 514-2988
                                             Fax:         (202) 616-8202
15                                           Email:       Joel.L.McElvain@usdoj.gov

16
                                             *Attorneys for the Movant, Alberto R. Gonzales*
17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| **ALBERTO R. GONZALES, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES,** ) ) ) | |
| **Movant,** ) | Case No. _____-MISC |
| ) | **[Proposed] Order** |
| v. ) | |
| ) | |
| **GOOGLE INC.,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

THIS MATTER having come before the Court on the Motion to Compel Compliance with Subpoena Duces Tecum filed by Alberto R. Gonzales, in his official capacity as Attorney General of the United States, and good cause having been shown, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the Respondent, Google Inc., is compelled to comply with the subpoena issued to it by the Movant within 21 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: _____

_____
JUDGE OF THE DISTRICT COURT

*Gonzales v. Google Inc.*
No. _____-MISC
Motion to Compel

## CERTIFICATE OF SERVICE

I hereby certify that I have made service of the foregoing Notice of Motion, and Motion to Compel Compliance with Subpoena, and of a Proposed Order, by depositing in Federal Express at Washington, D.C., on January 18, 2006, true, exact copies thereof, enclosed in an envelope with postage thereon prepaid, addressed to:

> Ashok Ramani, Esquire
> Google Inc.
> 1600 Amphitheatre Parkway
> Building # 47
> Mountain View, California 94043
> (Counsel for Respondent Google Inc.)
>
> Aden J. Fine, Esquire
> American Civil Liberties Union Foundation
> 125 Broad Street
> New York, New York 10004
> (Counsel for Plaintiffs, *ACLU v. Gonzalez*, E.D. Pa. No. 98-cv-5591)


_____
JOEL McELVAIN
*Attorney*