ADEN J. FINE (SB # 186728)
CHRISTOPHER A. HANSEN
BEN WIZNER
CATHERINE CRUMP
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004-2400
Telephone: (212) 549-2500
Facsimile: (212) 549-2651
afine@aclu.org

CHRISTOPHER R. HARRIS
885 Third Avenue
Suite 1000
New York, New York 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| ALBERTO R. GONZALES, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES,<br><br>      Movant,<br><br>v.<br><br>GOOGLE, INC.,<br><br>      Respondent. | Case No. 06-mc-80006-JW<br><br>**PLAINTIFFS' RESPONSE TO THE GOVERNMENT'S MOTION TO COMPEL GOOGLE TO COMPLY WITH A SUBPOENA** |
| AMERICAN CIVIL LIBERTIES UNION, et al.<br><br>      Plaintiffs,<br><br>v. | E.D. Pa. Case No. 98-CV-5591 |

PLAINTIFFS' RESPONSE TO
MOTION TO COMPEL GOOGLE
CASE NO. 06-mc -80006-JW

| | |
|---|---|
| 1 | ALBERTO R. GONZALES, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES |
| 2 | |
| 3 | |
| 4 | Defendant. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' RESPONSE TO
MOTION TO COMPEL GOOGLE
CASE NO. 06-mc-80006-JW

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

    I.    The Government Has Failed to Demonstrate That the Information Requested from Google Is Sufficiently Relevant to the Underlying Lawsuit to Warrant Requiring Google to Comply with the Subpoena ........................................................................... 4

    II.   If the Government's Motion is Granted, Plaintiffs Will Likely Need to Conduct Follow-up Discovery from Google to Understand What the Information Provided to the Government Actually Signifies ......................................................................... 9

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**CASES**

*American Civil Liberties Union v. Reno*, 31 F. Supp. 2d 473
 (E.D. Pa. 1999)...................................................................................................................2, 3

*American Civil Liberties Union v. Reno*, 217 F.3d 162 (3d Cir. 2000) ......................................3

*American Civil Liberties Union v. Reno*, 322 F.3d 240 (3d Cir. 2003) ...................................3, 4

*Ashcroft v. American Civil Liberties Union*, 535 U.S. 564 (2002)..............................................3

*Ashcroft v. American Civil Liberties Union*, 542 U.S. 656 (2004)..............................................4

*Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646
 (9th Cir. 1980).........................................................................................................................7

*Epstein v. MCA, Inc.*, 54 F.3d 1422 (9th Cir. 1995) .................................................................5, 9

*Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) ...................................................1

*Speiser v. Randall*, 357 U.S. 513 (1958).....................................................................................8

*Turner Broad. Sys. Inc. v. F.C.C.*, 512 U.S. 622 (1994)..............................................................9

**STATUTES**

47 U.S.C. § 223..............................................................................................................................1

47 U.S.C. § 231.....................................................................................................................1, 2, 8

**OTHER AUTHORITIES**

Katie Hafner, N.Y. Times, *After Subpoenas, Internet Searches Give
 Some Pause*, Jan. 25, 2006 at A1, *available at* http://www.nytimes.com/
 2006/01/25/national/25privacy.html?ex=1295845200&en=b252d4abc
 3761d3b&ei=5088&partner=rssnyt&emc=rss (last checked Feb. 17, 2006) .......................8, 9

Plaintiffs American Civil Liberties Union, American Booksellers Foundation for Free Expression, Addazi, Inc. d/b/a Condomania, Heather Corinna Rearick, Electronic Frontier Foundation, Electronic Privacy Information Center, Free Speech Media, Nerve.com, Inc., Aaron Peckham d/b/a Urban Dictionary, Philadelphia Gay News, Powell's Bookstores, Salon Media Group, Inc, and Sexual Health Network ("Plaintiffs") respectfully submit this response to the government's motion to compel Google to comply with a subpoena issued in connection with Plaintiffs' lawsuit against the government that is currently pending in the Eastern District of Pennsylvania, *ACLU, et al. v. Gonzales*, Case No. 98-CV-5591 (E.D. Pa.). Plaintiffs submit this response to provide the Court with an understanding of the principal claims at issue in the underlying lawsuit, and to explain why the government has failed to meet its burden to justify requiring Google to comply with this subpoena.

## BACKGROUND

The government issued this subpoena to Google in connection with Plaintiffs' lawsuit challenging the constitutionality of the Child Online Protection Act ("COPA"), 47 U.S.C. § 231 (1998). COPA is Congress's second attempt to regulate the Internet for minors by criminalizing sexually explicit speech on the Internet. When the Internet was still in its infancy, Congress first attempted to regulate sexually explicit Internet speech through the Communications Decency Act (the "CDA"), 47 U.S.C. § 223 (1994). That law attempted to restrict the access of minors to "indecent" and "patently offensive" speech on the Internet by threatening Internet speakers with criminal and civil penalties. The Supreme Court struck down the CDA as violative of the First Amendment because it was overbroad, not narrowly tailored to serve a compelling governmental interest and because less restrictive alternatives were available. *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997).

In response to the Supreme Court's invalidation of the CDA, Congress passed COPA in October 1998. COPA imposes severe criminal and civil sanctions – a $50,000 criminal fine, a $50,000 civil fine and six months in prison – on persons who "by means of the World Wide

Web, make[] any communication for commercial purposes that is available to any minor and that includes any material that is harmful to minors." 47 U.S.C. § 231(a)(1)-(3). As in the challenge to the CDA, Plaintiffs in this lawsuit contend that COPA violates the First Amendment because, *inter alia*, it suppresses an enormous amount of non-obscene speech that is protected for adults, it is unconstitutionally vague, and it is neither narrowly tailored to a compelling governmental interest nor the least restrictive means to address the government's interest in protecting children from sexually explicit content on the Internet.

Plaintiffs represent a diverse group of individuals and organizations, ranging from "new media" online magazines, to long-established booksellers, providers of sexual health information and artists. Plaintiffs all use the World Wide Web (the "Web") to provide information on a variety of subjects, including sexually explicit issues that they fear could be construed as "harmful to minors." Plaintiffs and their users post, read and respond to sexually explicit content on the Web including books and photographs, online magazines, resources designed for gays and lesbians, and visual art and poetry. Several Plaintiffs host Web-based chat rooms that allow readers to converse on various subjects. Like the vast majority of speakers on the Web, Plaintiffs provide virtually all of their online information for free. Nevertheless, all Plaintiffs are engaged in speech "for commercial purposes" as defined in COPA because they all communicate with the objective of making a profit. 47 U.S.C. § 231(e)(2)(B). Although certain Plaintiffs are large, well-known Web publishers, others are start-up operations run by single individuals. For Plaintiffs such as these, a finding of liability under COPA could cause personal financial ruin in addition to jail time and a criminal record.

Following an evidentiary hearing, on Febuary 1, 1999, the district court, the Honorable Lowell A. Reed, Jr. presiding, entered a preliminary injunction against enforcement of COPA, holding that Plaintiffs were substantially likely to succeed on their claim that COPA violates the First Amendment because it "imposes a burden on speech that is protected for adults," *American Civil Liberties Union v. Reno ("ACLU II")*, 31 F. Supp. 2d 473, 495 (E.D. Pa. 1999), and

PLAINTIFFS' RESPONSE TO
MOTION TO COMPEL GOOGLE                     2
CASE NO. 06-mc-80006-JW

because the government could not meet its burden of establishing that COPA is the "least restrictive means available to achieve the goal of restricting the access of minors to this [harmful-to-minors] material." *Id.* at 497. Based on the record before it, the district court specifically concluded that blocking or filtering products may be "at least as successful as COPA would be in restricting minors' access to harmful material online without imposing the burden on constitutionally protected speech that COPA imposes on adult users or Web site operators." *Id.*

On appeal, the Third Circuit upheld the district court's ruling that COPA violates the First Amendment on the alternative ground that "because the standard by which COPA gauges whether material is 'harmful to minors' is based on identifying 'contemporary community standards[,]' the inability of Web publishers to restrict access to their Web sites based on the geographic locale of the site visitor, in and of itself, imposes an impermissible burden on constitutionally protected First Amendment speech." *ACLU II*, 217 F.3d 162, 166 (3d Cir. 2000). The court affirmed on this single ground, and did not reach the other grounds relied upon by the district court.

The Supreme Court subsequently vacated and remanded the decision by the Third Circuit, narrowly holding "that COPA's reliance on community standards to identify 'material that is harmful to minors' does not *by itself* render the statute substantially overbroad for purposes of the First Amendment." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 585 (2002) (emphasis in original). Significantly, however, the Court did not lift the injunction preventing the government from enforcing COPA absent further action. *Id.* at 586. The Court remanded the case for further proceedings on issues including "whether COPA suffers from substantial overbreadth for other reasons, whether the statute is unconstitutionally vague, or whether the district court correctly concluded that the statute likely will not survive strict scrutiny analysis." *Id.* at 585-86.

On remand, the Third Circuit reaffirmed its conclusion that COPA was unconstitutional. *ACLU II*, 322 F.3d 240 (3d Cir. 2003). This time, the court held that COPA failed strict scrutiny

because, *inter alia*, it would deprive adults of material that they are constitutionally entitled to receive, *id.* at 260-61, it is not narrowly tailored, *id.* at 265, and it does not use the least restrictive means to achieve its ends. *Id.* The Third Circuit specifically agreed with the district court that "the various blocking and filtering techniques which that Court discussed may be substantially less restrictive than COPA in achieving COPA's objective of preventing a minor's access to harmful material." *Id.*

The case then went back before the Supreme Court. In June 2004, the Supreme Court upheld the injunction. *Ashcroft v. ACLU*, 542 U.S. 656 (2004). The Supreme Court ruled that the evidence in the record demonstrated that there are "a number of plausible, less restrictive alternatives" to COPA's severe criminal and civil penalties. *Id.* at 666. The Supreme Court specifically found that "[b]locking and filtering software is an alternative that is less restrictive than COPA, and, in addition, likely more effective as a means of restricting children's access to materials harmful to them." *Id.* at 666-67. Because it had been over five years since the district court made its factual findings, however, the Supreme Court remanded the case for trial to "allow the parties to update and supplement the factual record to reflect current technological realities." *Id.* at 672.

The case is now back before the district court. Trial is scheduled to commence on October 2, 2006. The current cut-off for fact discovery is March 1, 2006. Expert reports are due on March 15, 2006.[1]

## ARGUMENT

### I. THE GOVERNMENT HAS FAILED TO DEMONSTRATE THAT THE INFORMATION REQUESTED FROM GOOGLE IS SUFFICIENTLY RELEVANT TO THE UNDERLYING LAWSUIT TO WARRANT REQUIRING GOOGLE TO COMPLY WITH THE SUBPOENA.

The government has issued this subpoena to Google in an apparent attempt to obtain information that it believes will help demonstrate that filtering products do not effectively block

---

[1] The parties have filed a joint motion for a short extension of the pre-trial schedule and trial date. A hearing on that motion will be held before the district court on February 28, 2006.

harmful to minors material. The government has failed to demonstrate or to explain exactly how the information requested from Google (or the three other subpoenaed search engine companies) will assist it. Although the government conclusorily asserts that the information "would be of significant assistance to the Government's preparation of its defense of the constitutionality of this important statute," Motion at 4:20-21, the government has not explained *how* such information will be of use. The declaration of the government's expert, Dr. Phillip Stark, is notably devoid of any specifics or details about how Dr. Stark will use the information or what "studies" or "analysis" he will conduct based on this information. Instead, Dr. Stark simply asserts – without explaining the details of how he will do so – that the information will "help us understand" users' behavior and help him estimate how much harmful to minors material there is on the World Wide Web and how effective filtering products are at blocking access to such websites. Stark Decl., ¶¶ 3, 4. Absent specific details about how the requested information will actually be used for those purposes, the government has failed to meet its burden of establishing that the requested information is relevant and necessary or that Google should be required to undergo the burden of providing all of this information. Like all other litigants, the government cannot require third-parties to produce information – especially such a voluminous amount of information – without demonstrating why the information is relevant and why the government needs that information. *See, e.g., Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (per curiam) ("[T]he right of a party to obtain discovery is not unlimited. A discovery request must be 'relevant to the subject matter involved in the pending action' or 'reasonably calculated to lead to the discovery of admissible evidence.'"). Because the government has failed to do so, its motion to compel should be denied.

After the government issued its search engine subpoenas, Plaintiffs asked the government to explain the relevance of this information. The government failed to provide any details other than to assert, generally, that the information was relevant to the effectiveness of filtering

PLAINTIFFS' RESPONSE TO
MOTION TO COMPEL GOOGLE
CASE NO. 06-mc-80006-JW

5

products. The district court presiding over the underlying case also asked the government to explain the relevance of the search engine subpoenas. Again, the government provided a general response devoid of any specifics.

The effectiveness of filtering products is certainly relevant to this case. Because the government has refused to divulge what it plans to do with the requested information or to provide any details about its methodology for analyzing the information and testing the effectiveness of filtering products based on the information requested from Google, however, it is impossible for Plaintiffs, Google or the Court to determine if the requested information is relevant and necessary for the underlying lawsuit or if it will actually be of any use to the government. One significant problem with the government's refusal to disclose any details, for example, is that the government has failed to explain how the requested information will help it determine how much "harmful to minors" material there is on the Web. Plaintiffs contend that COPA's use of the term "harmful to minors" is unconstitutionally vague. Thus far in the case, the government has refused to provide any information about what it believes "harmful to minors" means, to identify websites that contain harmful to minors material, or even to state definitively whether Plaintiffs' sites have harmful to minors material. In fact, in response to discovery requests for such information, the government claimed that it could not provide such information because the requests' use of the term "harmful to minors" was "far too vague to permit an intelligent response." If the government cannot even tell Plaintiffs if all of their websites contain harmful to minors material or how the government would interpret and enforce COPA were it to go into effect, it is unclear how the government will be able to determine the quantity of harmful to minors websites accessible through Google or the other search engines. Nor is it clear how the government will be able to determine if filtering products effectively block harmful to minors websites if the government cannot figure out if the websites are harmful to minors in the first place.

PLAINTIFFS' RESPONSE TO
MOTION TO COMPEL GOOGLE                              6
CASE NO. 06-mc-80006-JW

The government's explanation for why it needs the requested information and what it plans to do with that information is too vague to justify compelling a non-party like Google to comply with such a burdensome subpoena. The government's approach is remarkably similar to a discovery request made of Plaintiffs themselves. The government issued document requests and interrogatories asking Plaintiffs to produce navigable copies of their entire websites – i.e., electronic copies of the websites that contain every web page and every hyperlink and that can be searched and navigated exactly as if one were to visit the website on the Internet. Many of the Plaintiffs do not maintain back-up copies of their entire websites, and it would have been extremely time-consuming and expensive for Plaintiffs to create such a navigable copy of their websites. Plaintiffs repeatedly asked the government to explain why it needed Plaintiffs to prepare a navigable copy for the government, and to explain why the government could not simply go to Plaintiffs' websites and print out whatever pages it wanted to preserve and/or utilize readily-available, existing software to preserve back-up copies of the publicly available plaintiff websites. The government refused to provide any specific details to explain its position. Instead, the government moved to compel Plaintiffs to provide the requested information. The district court denied the government's motion, holding that the government "has failed to establish that *navigable copies* of these websites are needed by defendant to reasonably investigate the claims of plaintiffs and/or prepare for trial" (emphasis in original) and that the government had failed to demonstrate that the requested information would not "be unduly expensive and burdensome for plaintiffs when compared to defendant's ability to peruse the websites readily available to him." *ACLU, et al. v. Gonzales*, Case No. 99-CV-5591 (E.D. Pa. Dec. 22, 2005), at 5-6. The same reasoning should hold here – especially because Google is not a party to the underlying lawsuit. *See, e.g., Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the target of discovery.") (internal citation

PLAINTIFFS' RESPONSE TO
MOTION TO COMPEL GOOGLE                 7
CASE NO. 06-mc-80006-JW

omitted)).

The government's attempt to obtain information about every search query entered on Google by its millions of users is particularly ironic given that one of the issues in the underlying case is the willingness of Internet users to provide personal, identifying information in order to access websites that contain material that is "harmful to minors" and whether such a requirement imposes an impermissible burden and chill on those individuals and the website speakers.[2] If the government is permitted to obtain all of this information from Google without making a specific showing as to why it needs this information, it is likely that Internet users will be even less willing to submit personal information simply to access websites – especially when the websites sought to be accessed concern sensitive and potentially embarrassing information for which the users will not want anyone, let alone the government, to know they are searching. *See* Katie Hafner, N.Y. Times, *After Subpoenas, Internet Searches Give Some Pause*, Jan. 25, 2006 at A1, *available at* http://www.nytimes.com/2006/01/25/national/25privacy.html?ex=1295845200&en =b252d4abc3761d3b&ei=5088&partner=rssnyt&emc=rss (last checked Feb. 17, 2006).

This subpoena and the government's motion underscore the need to have sufficient procedural protections in place to ensure that the government cannot just obtain huge amounts of information without providing a specific, detailed explanation as to why it needs that information. That is especially the case where, as here, the information requested concerns individuals' speech and communications. *See, e.g., Speiser v. Randall*, 357 U.S. 513, 520-21 (1958) ("[T]he more important the rights at stake the more important must be the procedural safeguards surrounding those rights. When the State undertakes to restrain unlawful advocacy it must provide procedures which are adequate to safeguard against infringement of

---

[2] Internet users' willingness to provide personal information is an issue in this case because COPA contains an affirmative defense if a website installs a blocking screen/page that requires entry of a credit card account number or other identifying information before a user can access the offending material. 47 U.S.C. § 231(c)(1); *id.* at § 231(b).

constitutionally protected rights – rights which we value most highly and which are essential to the workings of a free society.") (internal citation omitted)); *see also Turner Broad. Sys. Inc. v. F.C.C.,* 512 U.S. 622, 664 (1994) (the government "must do more than simply posit the existence of the disease sought to be cured" to defend a regulation of speech) (citation omitted)). Although the government's request does not expressly ask for personally identifiable information regarding Google's users, because it indisputably concerns what information those users are searching for, thinking about and desiring to read or view, the subpoena clearly implicates First Amendment rights. As has already been seen from the reaction to this broad subpoena, the inevitable effect will be that Internet users will be chilled from conducting certain searches or accessing certain materials for fear that the government will be able to obtain that information. *See* Hafner, *supra.*

This subpoena is the latest example of government overreaching, in which the government apparently believes it can demand that private entities turn over all sorts of information about their customers just because the government asserts that it needs that information. There is no indication that this will be the last such request. Like all other litigants, the government cannot force third-parties to produce information unless the government provides a sufficient and detailed justification for the disclosure. *Epstein,* 54 F.3d at 1423. Because it has not done so here, the government's motion should be denied.

II.  **IF THE GOVERNMENT'S MOTION IS GRANTED, PLAINTIFFS WILL LIKELY NEED TO CONDUCT FOLLOW-UP DISCOVERY FROM GOOGLE TO UNDERSTAND WHAT THE INFORMATION PROVIDED TO THE GOVERNMENT ACTUALLY SIGNIFIES.**

Because the government has refused to divulge any details about what it plans to do with the information requested from Google, it is impossible for Plaintiffs to ascertain if they need to conduct their own follow-up discovery from Google. If the motion is granted, however, Plaintiffs will very likely need to obtain further information from Google to understand what

Google's response actually signifies. In order to assess the reliability of the sample of information provided by Google – which the government apparently proposes to be done at the direction of Dr. Stark – Plaintiffs will likely need to know, among other things, how many total URLs Google has in its database, how often Google updates its database, how and where Google crawls the Web to locate URLs for its database, how many different servers those URLs are stored on, where those servers are located, and how many URLs there are within each server. For example, depending on how Google's search engine works and its architecture, if the sample of information is all hypothetically provided from one of Google's servers in San Francisco, the resulting information may be very different from the information that might be found on a server in Mississippi.

Similarly, in order to understand the significance of the search queries put into Google, Plaintiffs will need to understand how Google's search engine functions and produces results based on the input of queries. For example, Plaintiffs will need to know what factors Google uses to determine the specific results a given query will produce – such as whether the query words are present in the title of the document – in order to understand what a given search query actually signifies and what results a Google user will actually receive when he or she puts in a certain search query. Plaintiffs will also need to know if there is any way to distinguish between queries generated by actual individuals and queries generated by artificial programs or software. That information would clearly be relevant if the government intends to rely on the requested information to show what real Internet users' behavior is actually like or how often individuals search for sexually explicit information.

PLAINTIFFS' RESPONSE TO
MOTION TO COMPEL GOOGLE                    10
CASE NO. 06-mc-80006-JW

Plaintiffs have no need or desire to obtain any of this information from Google. If Google is required to comply with the government's subpoena and the government actually relies on the information, however, Plaintiffs will be forced to ask Google for this information.[3]

## CONCLUSION

Because the government has failed to provide any specific details to demonstrate why the information requested from Google is relevant and necessary to the underlying COPA lawsuit, and for the other foregoing reasons, the government's motion to compel should be denied.

Respectfully submitted,

Dated: February 17, 2006

By: /s/ Aden Fine
Aden J. Fine
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, New York 10004
Tel.: (212) 549-2606
Fax: (212) 549-2651

*Counsel to Plaintiffs*

---

[3] Plaintiffs have already informed AOL, one of the other search engines subpoenaed by the government, that they may need to obtain information from AOL regarding its search engine and its response to the government's subpoena if the government actually utilizes the information received from AOL.

PLAINTIFFS' RESPONSE TO
MOTION TO COMPEL GOOGLE           11
CASE NO. 06-mc-80006-JW

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Response to the Government's Motion to Compel Google to Comply with a Subpoena and Plaintiffs' Notice of Appearance was served, by electronic filing, on February 17, 2006 on the following:

>Joel McElvain
>United States Department of Justice
>Civil Division, Federal Programs Branch
>20 Massachusetts Avenue, NW
>Room 7130
>Washington, D.C. 20001

>Albert Gidari, Jr.
>Perkins Coie LLP
>1201 Third Avenue
>Suite 4800
>Seattle, WA 98101-3099

/s/ Julia Otis
Julia Otis