Jennifer Stisa Granick, California Bar No. 168423
Lauren A. Gelman, California State Bar No. 228734
STANFORD LAW SCHOOL CENTER FOR
　　INTERNET AND SOCIETY
Cyberlaw Clinic
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-0019
Facsimile: (650) 723-4426

Attorneys for *Amici Curiae*
Law Professors

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ALBERTO R. GONZALES, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES,<br><br>　　　　　　　　Movant,<br>　　v.<br>GOOGLE, INC.,<br>　　　　　　　　Respondent. | Case No. 5-06-mc-80006-JW<br><br>**BRIEF OF *AMICI CURIAE* LAW PROFESSORS REQUESTING ADDITIONAL BRIEFING IF THIS COURT ADDRESSES GOOGLE'S ECPA DEFENSE**<br><br>Hearing Date: Not Applicable<br>Time:　　　　Not Applicable<br>Courtroom:　8, 4th Floor |

## SUMMARY OF THE ARGUMENT

Whether the government must comply with provisions of the Electronic Communications Privacy Act ("ECPA") when requesting production of URLs and search query terms from a company with wide ranging products and services such as those offered by the respondent, Google, Inc., is a question of first impression that has never been answered by any United States court. Google has raised the defense that the ECPA *might* provide an absolute bar to its compliance with the government's subpoena in this matter. However, Google has not definitively briefed this issue. We take no position on the merits of whether the ECPA applies here, and do not believe that the claim needs to be addressed

-1-

to resolve this matter. If this Court decides to rule on this claim, however, then we ask that it allow additional briefing from *amici* and others. Otherwise, there is a real danger that a decision by the Court will set precedent on the statutory construction and the scope of the ECPA without the benefit of a complete airing of the legal arguments surrounding this issue.

**ARGUMENT**

**I.    The Electronic Communications Privacy Act Is a Complicated Statute**

In 1986, Congress enacted the Electronic Communications Privacy Act (ECPA) to update federal wiretap regulations. *See* Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848 (codified as amended in various sections of Title 18). Since then, a significant body of literature has evolved discussing the ECPA's application to new technologies.[1]

The ECPA has spawned a huge amount of academic scrutiny because it is extremely complicated and unclear. Courts have noted that the Act "is famous (if not infamous) for its lack of clarity." *Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457, 462 (5th Cir. 1994).[2] Even the definition of the entities to which the ECPA applies requires a complicated statutory analysis. For example, communications in storage are protected by a part of the ECPA called the Stored Communications Act ("SCA"). 18 U.S.C. §§ 2701-2711, section 2702(a), which states that unless permitted by section 2702(b):

> (2): a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service
>
> > (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of

---

[1] *See, e.g.,* Susan Freiwald, *Online Surveillance: Remembering the Lessons of the Wiretap Act*, 56 ALA. L. REV. 9, 44-74 (2004); Patricia Bellia, *Surveillance Through Cyberlaw's Lens*, 72 Geo. WASH. L. REV. 1375 (2004); Deidre K. Mulligan, *Reasonable Expectations in Electronic Communications: A Critical Perspective on the Electronic Communications Privacy Act*, 72 GEO. WASH. L. REV. 1557 (2004); Paul K. Ohm, Parallel- *Effect Statutes and E-mail "Warrants": Reframing the Internet Surveillance Debate*, 72 GEO. WASH. L. REV. 1599 (2004); Charles H. Kennedy & Peter P. Swire, *State Wiretaps and Electronic Surveillance After September 11*, 54 HASTINGS L.J. 971, 983-85 (2003); Daniel J. Solove, *Reconstructing Electronic Surveillance Law*, 72 GEO. WASH. L. REV. 1264 (2004).
[2] *See also Fraser v. Nationwide Mut. Ins. Co.*, 135 F.Supp.2d 623, 633 (E.D.PA. 2001) ("The ECPA has been noted for its lack of clarity."), rev'd in part on other grounds, 352 F.3d 107 (3d Cir. 2003); *Doe v. Ashcroft*, 334 F. Supp.2d 471, 488 n.72 (S.D.N.Y. 2004) (same).

such service;

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing;

(3): a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.

The term "remote computing service" ("RCS") is defined in 18 U.S.C. § 2711(2) as "provision to the public of computer storage or processing services by means of an electronic communications system." The term "electronic communications service" ("ECS") is defined as a service that "provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). The statute further defines "electronic communications" as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(14).

The language in the statute reflects Congress' understanding of technology as it existed in 1986 when the statute was passed. Applying the statute to Google requires the Court to interpret these terms in light of modern technology. For example, to assess how the ECPA applies in this case, a court may need to determine whether Google is a RCS or an ECS and whether search queries are electronic communications. While Google's brief offers some factual information relevant to these questions, *amici* believe that should the court deem it necessary to address this issue that Google never fully asserted, then additional briefing will help the court parse the statute to determine how it might apply under the facts presented here. This decision will impact the government's future ability to access information about private citizens, individual rights in private information stored by third parties and the responsibilities of entities like Google with regards to their customers.

II. **The Applicability of the ECPA in this Case is Particularly Ill-Suited to Resolution Without Additional Briefing.**

Should this Court deem it necessary to address the ECPA, then the novelty of the issue and the posture of the case support this Court allowing additional briefing on the ECPA's

application, as other courts have done in cases where important privacy interests are at stake.

### A. There Is No Case Law On the ECPA's Application to URLs or Search Queries Stored By a Company That Provides Electronic Communications Services.

There is no precedent for whether the ECPA applies to a company that allows its users to communicate as Google does. The two cases Google cites in its brief are based on analyses of systems this Court may determine are significantly different than the one provided by Google. Google states that "Google provides a service to the public that gives users the ability to send electronic communications in the form of search queries and to receive electronic communications in the form of search results. Google users may initiate recurring searches with results sent to their Google GMail or other accounts at user-defined intervals." Google Brief, at 19. Google and other entities like it are "no mere user of another's ECS… [Google] provides the very communications capability at issue here—search—and the capability to receive [*sic*] or direct receipt to oneself or others of search results." *Id.* at 19, ftn. 5. This service is very different from Amazon's website that allows users to purchase books (*Crowley v. Cyberspace Corp.*, 166 F.Supp.2d 1263 (N.D. Cal. 2001)) or JetBlue's website that allows users to purchase flights (*In re Jetblue Airways Corp. Privacy Legislation*, 379 F.Supp.2d 299 (E.D.N.Y. 2005)). Additional briefing would assist this Court in considering whether those differences matter in determining if the ECPA applies here.

### 1. The Posture of This Case Prevents Google From Adequately Addressing the ECPA Issue.

Google's primary contention is that the government has not shown that the requested information is necessary, and therefore Google should not be forced to disclose trade secret information. Under that theory, while Google contends that there "remains a substantial question as to whether the government's request for search queries invokes the mandatory procedures of the Electronic Communications Privacy Act," Google Brief, at 22, it argues that it "should not bear the burden of interpreting whether the government is entitled to search query results under the form of process it has issued." *Id.* at 19. In framing the argument in this manner, Google's brief naturally avoids in-depth analysis into the statutory construction and application of the statute. Accordingly, if this Court determines that Google has adequately raised a defense under the ECPA, and that it is necessary

for the Court to address the defense, then allowing additional parties to provide substantive briefing on this complicated statute will greatly benefit the Court in deciding the issue.

Even if Google had relied more on the issue, amici believe this Court would benefit from additional briefing which would allow the Court to hear a broader range of views as to how ECPA's application to these facts will affect privacy rights in other cases.

### 2. Courts Have Used Additional Briefing To Bolster The Adversarial Process in Electronic Privacy Cases.

Courts commonly permit additional parties to weigh-in on cases where important privacy interests are at stake. For example, when considering the applicability of the ECPA to the government's request for cell site location information, a district court ruled that "[s]uch applications are normally considered *ex parte*, but in light of the novelty of the issue and the absence at the time the August Order was written of any published case law, I have also allowed amicus curiae the Electronic Frontier Foundation ("EFF") to submit a letter-brief in opposition to the instant motion." *In re Application of the United States for an Order (1) Authorizing The Use of a Pen Register and a Trap and Trace Device and (2) Authorizing Release of Subscriber Information and/or Cell Site Information*, 396 F. Supp.2d 294, 295 (E.D.N.Y. 2005). *See also, Theofel v. Farey-Jones*, 359 F.3d 1066, 1069 (9th Cir. 2004) (amending original opinion to discuss arguments presented by United States as *amicus curiae* supporting petition for rehearing with suggestion for rehearing *en banc*); *United States v. Councilman*, 418 F.3d 67, 69 n.1 (1st Cir. 2005) (on *en banc* review, rejecting panel's disposition of case and acknowledging assistance of *amici curiae*). *Cf. United States v. Bach*, 310 F.3d 1063, 1066 (8th Cir. 2002) (after receiving amicus briefs noting complexity of issue, assuming, but not deciding, that customer of internet service provider retains an expectation of privacy in files held by provider.)

### CONCLUSION

For the reasons stated above, *Amici Curiae* respectfully ask that, if this Court intends to rule based on Google's ECPA claim, it allow further briefing on the question of the statute's application to

//

//

BRIEF OF *AMICI CURIAE* REQUESTING ADDITIONAL BRIEFING IF THIS COURT ADDRESSES THE ECPA DEFENSE

URLs, search terms, and the defendant's products and services.

Dated: February 24, 2006

Respectfully submitted,

STANFORD LAW SCHOOL
CENTER FOR INTERNET AND SOCIETY
CYBERLAW CLINIC

by /s/ Lauren A. Gelman
Lauren A. Gelman
Attorney for *Amici Curiae*
LAW PROFESSORS

by /s/ Jennifer Granick
Jennifer Stisa Granick
Attorney for *Amici Curiae*
LAW PROFESSORS